1  Fox Rothschild, LLP
   John A. Hunt, Esq. (NSBN 1888)
2  Bert Wuester Jr., Esq. (NSBN 5556)
   3800 Howard Hughes Parkway, Suite 500
3  Las Vegas, Nevada 89169
   Ph. (702) 262-6899; fax (702) 597-5503
4  Email: jhunt@foxrothschild.com
   Email: bwuester@foxrothschild.com
5
   BINGHAM McCUTCHEN LLP
6  GEOFFREY M. HOWARD (SBN 157468)
   LUCIA MACDONALD (SBN 233028)
7  CHAD RUSSELL (SBN 246046)
   Three Embarcadero Center
8  San Francisco, CA  94111-4067
   Telephone:  (415) 393-2000
9  Facsimile:   (415) 393-2286

10 DORIAN DALEY (SBN 129049)
   JENNIFER GLOSS (SBN 154227)
11 500 Oracle Parkway, M/S 5op7
   Redwood City, CA  94070
12 Telephone:  (650) 506-4846
   Facsimile:   (650) 506-7114
13 dorian.daley@oracle.com
   jennifer.gloss@oracle.com
14 Attorneys for Plaintiffs
   Oracle USA, Inc., *et al.*
15

FILED ___RECEIVED
___ENTERED ___SERVED ON
COUNSEL/PARTIES OF RECORD

2009 AUG 21  P 12: 44

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____DEPUTY

2:09-ms-00075-NA

16                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA

| | |
|---|---|
| 17  ORACLE USA, INC., a Colorado corporation, *et al.*, <br><br> 18 <br><br> 19             Plaintiffs, <br><br>           v. <br><br> 20  SAP AG, a German corporation, *et al.*, <br><br> 21             Defendants. <br><br> 22 <br> 23 | CASE NO.: (Misc.) <br><br> Pending In: Case No.: 07-CV-01658 PJH (EDL) United States District Court, Northern District of California, San Francisco Division <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY SETH RAVIN TO ANSWER DEPOSITION QUESTIONS, AND TO COMPEL NON-PARTY RIMINI STREET, INC. TO PRODUCE DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA [REDACTED]** |
| 24 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 25 <br> 26 <br> 27 | Hearing Date and Time: Under Submission <br> Judge: TBD <br> Courtroom: TBD <br> **Fact Discovery Cut-off**: December 4, 2009 |

28

1                 **NOTICE OF MOTION AND MOTION**

2   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that at a time and in a manner to be determined by the Court,

4   in the United States District Court, District of Nevada, plaintiffs Oracle USA, Inc., Oracle

5   International Corporation, and Oracle EMEA Limited (collectively, "Oracle") will and do hereby

6   move to compel non-party Seth Ravin ("Ravin") to answer deposition questions as described

7   below and non-party Rimini Street, Inc. ("Rimini") to produce the documents and information

8   described below.

9        This motion is based on the Notice of Motion and Motion, the Memorandum of Points

10   and Authorities, the accompanying Declarations of Geoffrey M. Howard and Chad Russell, the

11   pleadings on file in this action, and on such other matters presented to the Court at the time of

12   any hearing.

13                      **RELIEF SOUGHT**

14        Pursuant to Fed. R. Civ. Proc. 37 and 45, Oracle seeks an order compelling deposition

15   testimony from Ravin and production of documents by Rimini concerning copies of Oracle

16   software, automated tools used to download materials from Oracle support websites, and certain

17   process "checklists" already testified about by a current Rimini employee. [1]

18

19

20

21

22

23

24

25   [1] Pursuant to Fed. R. Civ. P. 37(a), Oracle's counsel affirms that they have conferred with
counsel for Rimini and Ravin in a good faith effort to reach agreement about this matter,

26   including before, during and after three depositions, through an exchange of letters, and a
telephone call. *See* Declaration of Geoffrey M. Howard in Support of Motion to Compel

27   ("Howard Decl."), ¶ 2; Declaration of Chad Russell in Support of Motion to Compel ("Russell
Decl."), ¶¶ 2-5 & Exs. A-C.

28

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    PRELIMINARY STATEMENT**

3          Oracle brings this motion to compel discovery from non-parties Ravin and Rimini.

4   United States District Court Magistrate Judge Elizabeth Laporte, who oversees the discovery

5   issues in the case, has already found that discovery on the issues at the heart of this motion is

6   appropriate for Oracle to obtain from both Ravin and Rimini.

7          Oracle sells enterprise software which performs many of the business process functions

8   its customers need to run their businesses.  When customers license this software, they also have

9   the annual option of purchasing support for the software from Oracle.  In January 2005, SAP

10  acquired a company called TomorrowNow, Inc. ("TomorrowNow") which competed with Oracle

11  by providing "third-party" support to Oracle's customers.  Third-party support is legal.  The way

12  SAP and TomorrowNow provided it was not.

13         In March 2007, Oracle brought this action against SAP AG, SAP America, Inc.,

14  (collectively, "SAP"), and TomorrowNow (altogether, "Defendants"), for copyright

15  infringement, violations of the Computer Fraud and Abuse Act, trespass, intentional and

16  negligent economic interference, and other claims.  Oracle's claims include allegations that

17  Defendants offered third party support at 50% of Oracle's prices by relying on a number of

18  illegal and infringing shortcuts, such as:

19             (i) making thousands of copies of Oracle software without any right or license to do so;

20             (ii) rampant "cross-use" of software copies (i.e., using software licensed to one customer

21  to support other customers, sometimes even TomorrowNow's entire customer base); and

22             (iii) routine, massive, and indiscriminate downloading of regularly published updates,

23  bug fixes and related support documentation from Oracle's website "on behalf of" customers

24  who were not licensed to access such downloads, and in violation of all applicable licenses and

25  Terms of Use related to website access.

26         Ravin, the former President of TomorrowNow, takes credit for conceiving the business

27  model that depends upon this illegal activity.  After SAP acquired TomorrowNow in 2005, Ravin

28  quit within a matter of weeks.  Soon after, he started another third-party support provider,

1    Rimini, and established its worldwide headquarters in Las Vegas, Nevada.[2] Ravin has since

2    touted the similarities between TomorrowNow's and Rimini's offering - "We look a lot alike in

3    areas because I did both."

4          Several of Oracle's claims allow Oracle to recover lost profits for customers that would

5    have stayed with Oracle -- and continued to pay for support on their Oracle software -- had SAP

6    not lured them away with its 50% discount premised on illegal support offerings.  Rimini has

7    attracted customers, many of them the same ones, using a similar discount.  Both before and after

8    Oracle sued SAP and TomorrowNow, some customers left TomorrowNow and instead

9    contracted with Rimini for support on the same software products.  SAP claims that Oracle may

10   not recover lost profits for those customers, on the grounds that Oracle would not have received

11   maintenance payments from them even if TomorrowNow had never existed - i.e.,

12   TomorrowNow did not *cause* the loss, as evidenced by customers' decision to sign up with

13   Rimini.

14         SAP's argument rests on the assumption that the Rimini business model is legal and that

15   Rimini is a legitimate alternative destination for these customers.  If, as Mr. Ravin has implied,

16   Rimini merely replicates the illegal TomorrowNow model, then Rimini is not a legitimate

17   alternative destination.  In that case, Oracle will have the information it needs to rebut SAP's

18   argument and pursue the profits attributable to those customers in Oracle's lost profits model.

19         Accordingly, Oracle has sought narrow, basic foundational discovery about Rimini's

20   methods of servicing Oracle customers.  If Ravin, when he founded Rimini, simply created

21   another TomorrowNow, as he has advertised, then SAP's causation argument fails.

22         Oracle presented this issue to Magistrate Judge Laporte.  She agreed with Oracle's

23

24   [2] The subpoenas which are the subject of this motion were issued by the United States District
     Court for the District of Nevada as a convenience and courtesy to Rimini, and based on the
25   assumption that relevant documents may be located at Rimini's headquarters.  However, Rimini
     has a significant presence in the Northern District of California.  The Rimini website shows one
26   of its three offices is in Pleasanton, California.  Rimini has a registered agent in Pleasanton,
     California.  Furthermore, while Oracle's deposition subpoena for Ravin issued from Nevada,
27   Defendant's cross-subpoena issued from the Northern District of California, and Ravin appeared
     for deposition in Pleasanton, California.

28

                                            4                     Case No. 07-CV-01658 PJH (EDL)

1  position, presented in the context of discussing the permissible scope of Mr. Ravin's deposition,

2  that "[s]ome testimony regarding Rimini Street appears relevant to damages." In doing so, she

3  rejected the argument Rimini likely will make here, that Oracle merely seeks pre-Complaint

4  discovery in order to sue Rimini. If Rimini has done nothing wrong, it should have nothing to

5  hide. If it has done something wrong, then that information is critical to Oracle's damages case

6  against SAP, regardless of where else that discovery might lead.

7       Despite Judge Laporte's order, despite the relevance to the litigation, and despite Ravin's

8  public statements about the Rimini model, Ravin and Rimini have refused to answer questions or

9  produce documents sufficient to show Rimini's basic model.

10       Accordingly, Oracle moves this Court for an order compelling discovery from Rimini

11  and Ravin. The fact discovery cutoff in this case is December 4, 2009.

12  **II.  FACTS**

13      **A.  Ravin Helped Create TomorrowNow's Infringing Business
    Model**

14

15       In 1999, while an employee of PeopleSoft, Ravin conceived the idea of using two

16  different copies of PeopleSoft software for two different releases to take a software update

17  published by PeopleSoft for one release and "retrofit" the update to also work with the older

18  release. Russell Decl., at ¶ 6 & Ex. D at 14:5-12; 16:7-17:11. Andrew Nelson worked out the

    technical details. *Id.* at 15:18-16:1.

19       Together, in 2002, they launched an "extended support" service at TomorrowNow with

20  the goal of offering "a third party alternative maintenance product to PeopleSoft customers on

21  older releases." *Id.* at 19:11-22. As Oracle describes in detail in its complaint, to provide

22  TomorrowNow's service, Ravin and Nelson used substantially the same process they had used at

23  PeopleSoft, which required making multiple copies of multiple software releases, and using them

24  to develop derivative works that they then sent, in identical form, to multiple customers (which

25  infringed Oracle's intellectual property rights and violated the PeopleSoft license agreements

26  with which Ravin and Nelson had intimate familiarity). Russell Decl., ¶ 7 & Ex. E at ¶¶ 19, 20,

27  118-124; *see also* Russell Decl., ¶ 6 & Ex. D at 20:21-21:5 ("I believe [TomorrowNow] used the

28

5

MOTION TO COMPEL [REDACTED]

1    same process or similar process, because you have to. There aren't that many different ways you

2    could do a retrofit.") Before long, TomorrowNow's service expanded to even more directly

3    compete with PeopleSoft, by offering software updates (allegedly) developed "from scratch"

4    rather than making a "retrofit" from the PeopleSoft update. Russell Decl., ¶ 6 & Ex. D at 43:13-

5    44:13. They provided these services without Oracle's consent and, more significantly, without

6    any license to use Oracle's software.

7        As alleged in Oracle's complaint, by the time Oracle sued, TomorrowNow's computer

8    systems housed thousands of illegal copies of Oracle software, known as "local environments,"

9    and millions of support files downloaded by TomorrowNow from Oracle's password-protected

10   computer systems. Russell Decl., ¶ 7 & Ex. E at ¶¶ 93-102, 118-124.

    **B.    Ravin Formed Rimini To Compete Against TomorrowNow,**
           **Offering The Same Services**

12       Ravin left TomorrowNow soon after SAP acquired it in 2005. Russell Decl., ¶ 6 & Ex. D

13   at 78:17-79:1. Within a few months, ███████████████████████████████████████████

14   ███████████████████████████. *Id.* at 199:12-22; 200:11-18. As Rimini's marketing

15   materials state, "Rimini Street is the leading third-party provider of enterprise software support

16   for Siebel, PeopleSoft, J.D. Edwards, and SAP licensees. A higher level of service, no required

17   upgrades, and annual support savings of more than 50%." Russell Decl., at ¶ 8 & Ex. F at RS-

18   ORACLE00001-03.

19       In touting the Rimini offering, Ravin has publicly discussed the similarity between the

20   TomorrowNow and Rimini business models. "What [Rimini is] offering is on top of what

21   [former TomorrowNow customers were] used to, which is the vanilla offering that I actually

22   assembled - *because it hasn't changed much from what I put together at TomorrowNow* several

23   years ago when we were launching the company. . . . You can't take the facts away of the

24   history because [TomorrowNow's and Rimini's] histories have run together. There's no way to

25   separate it. We look a lot alike in areas because I did both." Russell Decl., ¶ 9 & Ex. G

26   (emphasis supplied).

27       At his deposition, Rimini employee George Lester (a technical architect of the

28

MOTION TO COMPEL [REDACTED]

1    TomorrowNow system), testified that one of his early jobs at the startup Rimini was to '█████

2    █████████████████.'' Russell Decl., ¶ 10 & Ex. H at 213:17-214:10.[3]

3        **C.    Defendants Contend That Rimini Is Relevant To Their Defense**

4        Defendants asserted that Rimini's business model was relevant to this litigation as early

5    as January 2008, in their first motion to compel before a private discovery referee.  Those

6    moving papers stated:

7    "The third party support market is also relevant to the issue of damages.  Oracle alleges that it

8    lost customers as a result of improper downloads and 'cross-use' of its intellectual property.

9    That puts into issue the extent to which Oracle lost business to other third-party service providers

10   *and derivatively how those companies were doing business.*  It would be misleading and artificial

11   for Oracle to pretend that it only lost customers to TN and only because of the allegedly

12   excessive downloading by TN.  Evidence that Oracle lost business to other third-party support

13   providers will be directly relevant to prevent Oracle from taking that misleading position.  It is

14   also relevant to determine whether Oracle would have lost some or all of those customers to

15   some other support vendor regardless of whether TN was in business."  Russell Decl., ¶ 11 & Ex.

16   I at 6 (emphasis supplied) (citing 4 Nimmer on Copyright § 14.02(a) at 14-13 to 14-14 and *Polar*

17   *Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004)).[4]

18       Defendants specifically identify Rimini for this argument: "[t]he case of Rimini Street

19   illustrates the importance of this discovery.  Based on an interview with Rimini's CEO published

20   shortly after Oracle filed this lawsuit, an industry analyst noted that Rimini provides 'nearly

21   identical services as TN.'"  *Id.* at 4.

22       Defendants have also asked questions about Rimini of at least ten Oracle deponents,

23

24   _____

25   [3] Oracle deposed George Lester on April 23, 2009 pursuant to a subpoena issued by the United
     States District Court for the Western District of North Carolina.  He was represented by the same
26   counsel as Ravin and Rimini and similarly refused to answer further questions about ████████
     ████████. *See, e.g.,* Russell Decl., ¶ 10 & Ex. H at 216:4-23.
27   Counsel for Oracle provided these cites to counsel for Rimini Street by telephonic meet and
     confer.  Russell Decl., ¶ 2.
28

MOTION TO COMPEL [REDACTED]

1   including for example, "Do you know any details about how Rimini Street provides support?"

2   Russell Decl., ¶ 12 & Ex. J at 188:4-6.

3   **D.      The Trial Court Found That Discovery Related to Rimini Is**
          **Relevant**

4

5   Because Defendants continued to pursue discovery related to Rimini, and to take the

6   position that Oracle must reduce its lost profits claim by the amount attributable, at a minimum,

7   to customers who switched from TomorrowNow to Rimini, Oracle also necessarily sought such

8   discovery.

9   Oracle served a subpoena for documents and deposition testimony issued by the United

10   States District Court for the District of Nevada on Ravin on February 2, 2009.  Russell Decl., ¶

11   13 & Ex. K.

12   On May 18, 2009, Oracle served a subpoena on Rimini issued by the United States

13   District Court for the District of Nevada for three narrow categories of documents:

14          1.     Documents sufficient to show Rimini's business model, including whether

15   Rimini relies or ever has relied on copies of customers' licensed Oracle software to provide

16   software support;

17          2.     Documents sufficient to show what automated tools Rimini has used to

18   download materials from any Oracle customer support website, including protocols applicable to

19   any automated tools;

20          3.     All "checklists" or other Documents drafted, revised, or maintained by Beth

21   Lester to track █████████████████████████████████████, as

22   testified to by Beth Lester in her deposition at pages 76:6-77:1 and 77:18-25.  Russell Decl., ¶ 14

23   & Ex. L.[5]

24   Magistrate Judge Laporte heard arguments from Oracle, Defendants, and counsel for

25

26   [5] Oracle deposed Beth Lester on April 22, 2009 pursuant to a subpoena issued by the United

27   States District Court for the Western District of North Carolina.  She was represented by the
     same counsel as Ravin and Rimini and similarly refused to answer questions about Rimini's
     business model.  The cited transcript excerpts are quoted in full in Oracle's document requests.

28

MOTION TO COMPEL [REDACTED]

1    Ravin and Rimini on March 31, 2009 regarding the length and scope of Ravin's testimony, and

2    subsequently ordered that Ravin sit for 10 hours of deposition and that, in response to an offer

3    similar to what Oracle explains above, "[s]ome testimony regarding Rimini Street appears

4    relevant to damages." Russell Decl., ¶ 15 & Ex. M at 1:17-2:3.

5         E.    **The Trial Court Also Said The Protective Order Is Adequate**

6         Oracle and Defendants agreed to an 18-page Protective Order at the outset of this

7    litigation, on June 7, 2007, after several rounds of negotiations. Russell Decl., ¶ 16 & Ex. N.

8    The Protective Order governs all discovery, including discovery "provided by or obtained from

9    non-parties." *Id.* at Preamble & ¶ 2.

10        At the March 31 hearing, counsel for Ravin and Rimini expressed concern that Oracle or

11   SAP might learn information from Ravin which could form the basis of an action against Rimini.

12   Russell Decl., ¶ 17 & Ex. O. Judge Laporte rejected this concern as a basis for preventing

13   inquiry into Rimini's business: "I don't think you have some freedom to conceal trademark [or]

14   copyright infringement." *Id.* at 20:22-21:4. She further noted that both Oracle and SAP, two

15   "arch-competitors," had agreed to the Protective Order governing the case, and that "usually I

16   would find a stringent protective order like that sufficient." *Id.* at 20:1-7; 22:15-18.

17        F.    **Rimini And Ravin Refused To Produce Documents Or Answer
                Questions Related To Rimini's Business Model**
18
          Despite Judge Laporte's guidance and Order, and despite the protections of the Protective
19
     Order, Ravin and Rimini have both blocked all discovery related to Rimini's business model.
20
          At his deposition on May 21, 2009, after testifying for approximately five hours about the
21
     service model he helped create at TomorrowNow, Ravin refused to answer foundational
22
     questions about the Rimini iteration of the model:[6]
23

24   ███████████████████████████████████████

25   ───────────────────────────────────
     [6] Oracle has deposed three Rimini witnesses:  Beth Lester, George Lester, and Ravin. By
26   agreement between Oracle and counsel for these witnesses and Rimini, Oracle has asked
     illustrative foundational questions, and has allowed instructions not to answer, so that the Parties
27   and the Court will have a more complete record to facilitate resolving this dispute. Howard
     Decl., ¶ 2; *see, e.g.,* Russell Decl., ¶ 6 & Ex. D at 196:10-199:11.
28

Case No. 07-CV-01658 PJH (EDL)

MOTION TO COMPEL [REDACTED]



. Russell Decl., ¶ 6 & Ex. D at 204:17-211:3.

Ravin cooperated with Defendants in confirming that Rimini was currently servicing at least ▮ former TomorrowNow customers, but would not provide a single detail about how those customers are being supported[7]:

---

[7] SAP wound down TomorrowNow's operations on October 31, 2008.

Case No. 07-CV-01658 PJH (EDL)

MOTION TO COMPEL [REDACTED]



. *Id.* at 256:17-257:13; 260:15-261:4.

Ravin's counsel's reasons for the instructions not to answer were that this line of inquiry "                                        ." *Id.* at 204:25-205:5.

Similarly, Rimini refused to produce documents responsive to Oracle's document requests. Russell Decl., ¶ 18 & Ex. P. For Requests No. 2 and 3 (re downloading tools and "checklists"), Rimini refused outright, citing the same objections as Ravin - relevance and confidentiality.[8] *Id.* For Request No. 1 (re copies of Oracle Software), Rimini actually agreed to produce responsive documents, but then produced just twelve short printouts from its publicly-available website. *Id.*; Russell Decl., ¶ 8 & Ex. F. These printouts do not begin to explain any reliance on copies of Oracle's software. Russell Decl. at ¶ 8 & Ex. F.

## III.   ARGUMENT

### A.   Foundational Information About Rimini's Business Model Is Relevant

Oracle is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Proc. 26(b)(1). This standard for "relevancy under Rule 26 remains broad." *G.K. Las Vegas Letd. Partnership v. Simon Property Group, Inc.*, 2008 WL 5083700, *3 (D. Nev. 2008). "A district court whose only connection with a case

---

[8] Rimini also objected to Request No. 3 "to the extent it seek documents that relate to Beth Lester." Russell Decl. at ¶ 18 & Ex. P.

Case No. 07-CV-01658 PJH (EDL)

MOTION TO COMPEL [REDACTED]

1   is supervision of discovery ancillary to an action in another district should be especially hesitant

2   to pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt,

3   the rule indicates that the court should be permissive." *Truswal Systems Corp. v. Hydro-Air*

4   *Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987) (internal citations omitted) (*followed*

5   *by Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D 329 (N.D. Cal. 1995)).

6         Judge Laporte suggested such cooperation on the record in the event that Rimini disputed

7   relevance.  Russell Decl., ¶ 17 & Ex. O at 22:15-18 ("My guess is if you inflict this on another

8   magistrate judge in Nevada, that judge will want to consult me.").

9         Defendants have thrust Rimini's business model squarely into the damages aspect of this

10   litigation. Citing, for example, Nimmer § 14.02(a), Defendants have argued in two motions that

11   Oracle must show "what profits would have accrued to [Oracle] *but for* the infringement."

12   Russell Decl., ¶ 11 & Ex. I at 6 (emphasis in original); *see also* Russell Decl., ¶¶ 6, 12, 20 & Exs.

13   D at 256:17-257:13, R at 10.

14         Defendants obviously intend to argue at trial that, at a minimum, Oracle can claim no lost

15   profits as to any TomorrowNow customer that later contracted with Rimini, on the grounds that

16   those customers chose another third-party support provider without regard to TomorrowNow's

17   infringing activities.  But that argument fails if Rimini operates in the same infringing way as

18   TomorrowNow, as the limited evidence so far tends to suggest.  In other words, if Rimini is

19   simply a carbon copy of TomorrowNow's original infringing model then Oracle *would* still have

20   the customers who defected for Rimini but for the same infringing activity. *See, e.g.*, Russell

21   Decl., ¶ 19 & Ex. Q at 103:10-21 (current Rimini customer Pepsi Americas would not continue

22   that service "if it turns out that Rimini Street is violating Oracle's intellectual property.").

23         The "checklists" about which Ms. Lester testified are particularly relevant, and involve

24   no burden whatsoever since Rimini can retrieve them directly from her files.  She testified that

25   the checklists represent ██████████████████████████████████████

26   ████████████████████████████████. Russell Decl., ¶ 14 & Ex. L at Request

27   No. 3.  The checklists may reveal whether Rimini is making or using illegal copies of Oracle

28   software, or illegally preparing derivative works from Oracle software, which makes them

MOTION TO COMPEL [REDACTED]

1    directly relevant to the damages arguments in Oracle's underlying case against SAP.  To the

2    extent that Rimini now raises privilege or relevance objections related to these checklists, it

3    offered no such objections when Oracle's counsel questioned Ms. Lester about the content of

4    these checklists at deposition.  *Id.*

5           Judge Laporte has been assigned to this case for more than a year, and has held at least

6    eleven discovery conferences and heard at least three rounds of motions to compel.  Her Order

7    regarding Ravin's deposition provides - "Some testimony regarding Rimini Street appears

8    relevant to damages."  Russell Decl., ¶ 15 & Ex. M at 1:17-2:3.

9           Even Rimini has acknowledged that its business model is relevant to some extent,

10    agreeing to produce documents responsive to Oracle's first document request regarding copies of

11    Oracle's software (but then defying that agreement by producing only website printouts).

12    Russell Decl., ¶¶ 8, 18 & Exs. F, P.  Furthermore, Ravin's public statements, including

13    statements *after* Oracle brought this lawsuit, show why Oracle has every reason to believe

14    Defendants may not be able to present Rimini to the jury as the critical break in the causal

15    damages chain Defendants envision.  *See, e.g.*, Russell Decl., ¶ 9 & Ex. G (The Rimini model

16    "hasn't changed much from what I put together at TomorrowNow several years ago when we

17    were launching the company.").

18           Foundational discovery about Rimini's model, as sought by Oracle's narrow document

19    requests to Rimini and questions to Ravin, is thus relevant and appropriate.

20    **B.**    **The Existing Protective Order Addresses Rimini's And**

                        **Ravin's Other Objections**

21

22           Oracle and Defendants have negotiated a Protective Order for this case that more than

    adequately addresses Rimini's concerns about confidentiality.  Russell Decl., ¶ 16 & Ex. N.  It

23

    protects information produced by non-parties.  *Id.* at Preamble & ¶ 2.  Material designated

24

    Confidential or Highly Confidential cannot be disclosed publicly.  *Id.* at ¶¶ 3, 4, 8-10.  The use

25

    prohibition limits use of discovery material to this litigation only, unless the Parties agree or the

26

    Court orders otherwise.  *Id.* at ¶ 8.  These are significant protections which render Rimini's and

27

    Ravin's confidentiality concerns moot (without conceding their validity).

28

1    Judge Laporte agrees again.  Over Rimini's counsel's objections, Judge Laporte noted

2    that if the Order is good enough for two "arch competitors" such as Oracle and SAP, she would

3    "usually [] find a stringent protective order like that sufficient."  Russell Decl., ¶ 17 & Ex. O at

4    20:1-7.

5    **IV.    CONCLUSION**

6    For the foregoing reasons, Oracle thus respectfully requests that the Court issue an order

7    compelling:

8    1.    Ravin to sit for two further hours of deposition to answer the questions he refused

9    to answer in his noticed deposition, as well as any questions logically flowing from the answers

10   to those questions.  *See* Russell Decl., ¶ 6 & Ex. D at 196:4-199:11; 204:17-211:3; 259:23-261:4;

11   2.    Rimini to produce documents sufficient to show Rimini's business model,

12   including whether Rimini currently relies or ever has relied on copies of customers' licensed

13   software to provide software support.  *See* Russell Decl., ¶ 14 & Ex. L at Request No. 1;

14   3.    Rimini to produce documents sufficient to show what automated tools Rimini has

15   used to download materials from any Oracle customer support website, including protocols

16   applicable to any automated tools.  *See id.* at Request No. 2; and

17   4.    Rimini to produce all "checklists" or other Documents drafted, revised, or

18   maintained by Beth Lester to track the development, testing, documentation, packaging, or

19   delivery of tax updates, as testified to by Beth Lester in her deposition at pages 76:6-77:1 and

20   77:18-25.  *See id.* at Request No. 3.

BINGHAM McCUTCHEN LLP

21

22

23   DATED:  August 19 , 2009          By: _____

24                                         Geoffrey M. Howard
                                          Attorneys for Plaintiffs
25                                   Oracle USA, Inc., Oracle International
                                      Corp., and Oracle EMEA Ltd.

26

27

28

Fox Rothschild, LLP
John A. Hunt, Esq. (NSBN 1888)
Bert Wuester Jr., Esq. (NSBN 5556)
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Ph. (702) 262-6899; fax (702) 597-5503
Email: jhunt@foxrothschild.com
Email: bwuester@foxrothschild.com

BINGHAM McCUTCHEN LLP
GEOFFREY M. HOWARD (SBN 157468)
LUCIA MACDONALD (SBN 233028)
CHAD RUSSELL (SBN 246046)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  (415) 393-2000
Facsimile:   (415) 393-2286

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506-4846
Facsimile:   (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., *et al.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, *et al.*,<br><br>       Plaintiffs,<br><br>   v.<br><br>SAP AG, a German corporation, *et al.*,<br><br>      Defendants. | CASE NO.: (Misc.)<br><br>Pending In: Case No.: 07-CV-01658 PJH (EDL)<br>United States District Court, Northern District of California, San Francisco Division<br><br>**DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY SETH RAVIN TO ANSWER DEPOSITION QUESTIONS, AND TO COMPEL NON-PARTY RIMINI STREET, INC. TO PRODUCE DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA**<br><br>Hearing Date and Time: Under Submission<br>Judge: TBD<br>Courtroom: TBD<br>**Fact Discovery Cut-off**: December 4, 2009 |

Case No. 07-CV-01658 PJH (EDL)

DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF MOTION TO COMPEL

1    I, Geoffrey M. Howard, declare as follows:

2        1.    I am a partner at Bingham McCutchen LLP, counsel of record for Oracle

3    USA, Inc., Oracle International Corporation, Oracle EMEA Limited, and Siebel Systems, Inc.

4    (collectively, "Oracle") in the above-referenced action pending in the United States District

5    Court for the Northern District of California (the "Action"). I make this declaration based on my

6    personal knowledge from my representation of Oracle and could and would testify competently

7    to the facts stated herein if called upon to do so.

8        2.    Oracle has deposed three Rimini witnesses in the Action: Beth Lester,

9    George Lester, and Seth Ravin. By agreement between Oracle and counsel for these witnesses

10   and Rimini, Oracle has asked illustrative foundational questions related to Rimini, and has

11   allowed instructions not to answer, so that the Parties and the Court will have a more complete

12   record to facilitate resolving this dispute. Counsel for Rimini agreed to this arrangement as an

13   alternative to immediately terminating the depositions and seeking protective orders.

14

15   I declare under penalty of perjury under the laws of the United States that the

16   foregoing is true and correct and that this declaration is executed at San Francisco, California, on

17   August 19, 2009.

18   _____
         Geoffrey M. Howard

19

20

21

22

23

24

25

26

27

28

2                           Case No. 07-CV-01658 PJH (EDL)

DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF MOTION TO COMPEL

Fox Rothschild, LLP
John A. Hunt, Esq. (NSBN 1888)
Bert Wuester Jr., Esq. (NSBN 5556)
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Ph. (702) 262-5899; fax (702) 597-5503
Email: jhunt@foxrothschild.com
Email: bwuester@foxrothschild.com

BINGHAM McCUTCHEN LLP
GEOFFREY M. HOWARD (SBN 157468)
LUCIA MACDONALD (SBN 233028)
CHAD RUSSELL (SBN 246046)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  (415) 393-2000
Facsimile:  (415) 393-2286

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506-4846
Facsimile:  (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., *et al.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>SAP AG, a German corporation, *et al.*,<br><br>        Defendants. | CASE NO.: (Misc.)<br><br>Pending In: Case No.: 07-CV-01658 PJH (EDL)<br>United States District Court, Northern District of California, San Francisco Division<br><br>**DECLARATION OF CHAD RUSSELL IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY SETH RAVIN TO ANSWER DEPOSITION QUESTIONS, AND TO COMPEL NON-PARTY RIMINI STREET, INC. TO PRODUCE DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA**<br><br>Hearing Date and Time: Under Submission<br>Judge: TBD<br>Courtroom: TBD<br>**Fact Discovery Cut-off**: December 4, 2009 |

Case No. 07-CV-01658 PJH (EDL)

1        I, Chad Russell, declare as follows:

2        1.        I am an associate at Bingham McCutchen LLP, counsel of record for

3   Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Limited, and Siebel Systems,

4   Inc. (collectively, "Oracle") in the above-referenced action pending in the United States District

5   Court for the Northern District of California (the "Action").  I make this declaration based on my

6   personal knowledge from my representation of Oracle and could and would testify competently

7   to the facts stated herein if called upon to do so.

8        2.        On July 20, 2009, I participated in a phone call with counsel for Rimini

9   Street ("Rimini") to discuss Rimini's objections to Oracle's Subpoena (see ¶ 18 below).  The call

10  lasted approximately 30 minutes.  Counsel for Oracle supplied legal authority on this call at

11  counsel for Rimini's request.  The parties reached an impasse as to all issues discussed on the

12  call.

13       3.        Attached as Exhibit A is a true and correct copy of a letter from counsel

14  for Oracle to counsel for Rimini dated June 19, 2009, regarding Rimini's objections to Oracle's

15  Subpoena.

16       4.        Attached as Exhibit B is a true and correct copy of a letter from counsel

17  for Rimini to counsel for Oracle dated July 7, 2009, regarding Oracle's June 19 letter.

18       5.        Attached as Exhibit C is a true and correct copy of a letter from me to

19  counsel for Rimini dated July 20, 2009 regarding the phone call held by the parties that day.

20       6.        Attached as Exhibit D are true and correct copies of excerpts from the

21  transcript of the deposition of Seth Ravin, taken on or about May 21, 2009 in the Action.

22       7.        Attached as Exhibit E is a true and correct copy of Oracle's Fourth

23  Amended Complaint, filed on or about August 18, 2008, which is the current, operative

24  complaint in the Action.

25       8.        Attached as Exhibit F are true and correct copies of all documents

26  produced to Oracle by Rimini Street on or about June 8, 2009 and Bates-labeled RS-

27  ORACLE00001-33.

28       9.        Attached as Exhibit G is a true and correct copy of a printout of an article

DECLARATION OF CHAD RUSSELL IN SUPPORT OF MOTION TO COMPEL

1    entitled "The Man Behind 'Half Off' Third-Party Software Maintenance," dated April 11, 2008,

2    and available at http://www.riministreet.com.  Oracle has supplied the highlighting.

3              10.    Attached as Exhibit H are true and correct copies of excerpts from the

4    transcript of the deposition of George Lester, taken on or about April 23, 2009 in the Action.

5              11.    Attached as Exhibit I are true and correct excerpts from Defendants'

6    Motion to Compel No. 1 before Discovery Referee Judge Legge, submitted on or about January

7    28, 2008 in the Action.  Oracle has supplied the highlighting.

8              12.    Attached as Exhibit J are true and correct copies of excerpts from the

9    transcript of the deposition of Rick Cummins, taken on or about September 16, 2008 in the

10   Action.  Defendants have also questioned at least the following Oracle witnesses about Rimini

11   Street in the Action:  Larry Ellison, Juan Jones, Charles Phillips, Nancy Lyskawa, Elizabeth

12   Shippy, Charles Homs, Safra Catz, Todd Adler, and John Burke.

13             13.    Attached as Exhibit K is a true and correct copy of Subpoena for

14   documents and testimony issued by the United States District Court for the District of Nevada,

15   and served by Oracle on Seth Ravin on or about February 2, 2009 in the Action.

16             14.    Attached as Exhibit L is a true and correct copy of a Subpoena for

17   documents issued by the United States District Court for the District of Nevada, and served by

18   Oracle on Rimini Street on or about May 18, 2009 in the Action.

19             15.    Attached as Exhibit M is a true and correct copy of the Order Following

20   Discovery Conference issued by Magistrate Judge Laporte on or about April 2, 2009 in the

21   Action.

22             16.    Attached as Exhibit N is a true and correct copy of the Stipulated

23   Protective Order issued on or about June 7, 2007 in the Action.

24             17.    Attached as Exhibit O are true and correct copies of excerpts from the

25   transcript of the discovery hearing held by Magistrate Judge Laporte on March 31, 2009 in the

26   Action.  Portions have been redacted to protect sensitive information which the parties agreed to

27   seal.

28             18.    Attached as Exhibit P is a true and correct copy of the Response and

3                   Case No. 07-CV-01658 PJH (EDL)

DECLARATION OF CHAD RUSSELL IN SUPPORT OF MOTION TO COMPEL

1     Objections of Non-Party Rimini to Oracle's Subpoena, served by Rimini Street on or about May

2     29, 2009 in the Action.

3            19.     Attached as Exhibit Q are true and correct copies of excerpts from the

4     transcript of the deposition of Pepsi Americas, Inc., taken on or about June 2, 2009 in the Action.

5            20.     Attached as Exhibit R are true and correct excerpts from Defendants'

6     Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners,

7     filed on or about January 16, 2009 in the Action. The redactions appear in the original version

8     filed by Defendants. Oracle has supplied the highlighting

9

10            I declare under penalty of perjury under the laws of the United States that the

11     foregoing is true and correct and that this declaration is executed at San Francisco, California, on

12     August 19, 2009.

                                    Chad Russell

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# BINGHAM

Lucia MacDonald
Direct Phone: (415) 393-2630
Direct Fax:    (415) 393-2286
Lucia.macdonald@bingham.com

June 19, 2009

**Via U.S. Mail and Electronic Mail**

Aaron D. Ford
Snell & Wilmer LLP
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Phone: 702-784-5265
E-mail: aford@swlaw.com

Michael B. Levin
Wilson Sonsini Goodrich & Rosati PC
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone: 650-493-9300
E-mail: MLevin@wsgr.com

Re:   **Response And Objections Of Non-Party Rimini Street, Inc. To Oracle USA,
      Inc.'s Subpoena.** *Oracle v. SAP AG, et al.*

Dear Messrs. Ford and Levin:

This letter addresses Rimini Street, Inc.'s ("Rimini") Response and Objections to Oracle
USA, Inc.'s ("Oracle") subpoena for the production of documents, in an effort to resolve
Rimini's concerns without Court involvement. Oracle's subpoena contained only three
narrowly tailored requests for documents that are well within the permissible scope of
discovery under the Federal Rules of Civil Procedure and impose no undue burden on
Rimini.

## I.   Rimini's General Objections

Rimini has raised a variety of boilerplate objections that are not supported by any specific
facts. Here, Oracle addresses the following objections Rimini has made: (1) relevance
and purported pre-complaint discovery; (2) purported burden in so far as the costs of
compliance outweigh Oracle's need for the discovery; (3) insufficient service; (4)
objection to lack of temporal scope; (5) confidentiality obligations with third-parties; (6)
objection based on purported confidential and proprietary nature of documents sought;
and (7) privilege and work product protection.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

June 19, 2009
Page 2

If there is an objection that is not specifically addressed in this letter that Rimini stands upon, please articulate the basis for that objection.

## 1.   Relevance And The Purported Pre-Complaint Discovery Objection

Several of Oracle's claims allow recovery of lost profits for customers that would have stayed with Oracle — and continued to pay for support on their Oracle software — had SAP not offered a 50% discount premised on TomorrowNow's illegal support offerings. Both before and after Oracle sued SAP and TomorrowNow, some customers left TomorrowNow and instead contracted with Rimini for support on the same software products. SAP claims that Oracle may not recover lost profits for those customers, on the grounds that Oracle would not have received maintenance payments from them even if TomorrowNow had never existed — i.e., TomorrowNow did not cause the loss, as evidenced by customers' decisions to obtain support from Rimini. To rebut SAP's argument, which is based on assumptions about Rimini's business model, Oracle must obtain the discovery requested in the subpoena.

Oracle presented this issue to Magistrate Judge Laporte. Counsel for Rimini and Ravin argued the same objection raised here to the Court. The Court agreed with Oracle's position that discovery into Rimini's business model and support practices "appears relevant to damages."

In addition to Magistrate Judge Laporte's specific findings concerning the relevance of Rimini, the standard for relevance is the liberal standard set forth in Federal Rule of Civil Procedure 26(b). Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding any matter that is not privileged and is relevant to the claim or defense of any party involved in the pending action. Fed. R. Civ. P. 26(b)(1). A Rule 45 subpoena is subject to the relevance requirements set forth in Rule 26(b) above. See The Rutter Group, Federal Civil Procedure Before Trial § 11:2305 (2005). A "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Given this liberal standard and the trial Court's specific findings, the relevance of the information sought from Rimini is well established.

## 2.   Burden Objection Re: The Costs Of Compliance Outweigh Oracle's Need For The Discovery

As set forth above, Oracle has a substantial need for this discovery because it is critical to Oracle's damages case against SAP. And, this discovery can only be obtained from Rimini. Rimini has not made any showing of a substantial burden arising from producing documents in response to three narrow topics. If Rimini can articulate a specific burden, please do so immediately. Oracle remains willing to discuss ways to search Rimini's records that will alleviate any demonstrated burden.

June 19, 2009
Page 3

3.   **Objection To Service (Federal Rule of Civil Procedure 45(b)(2))**

Rimini objects to the subpoena on the basis that service was insufficient under Federal Rule of Civil Procedure 45(b)(2). This objection is meritless. See Tubar v. Clift, No. C05-1154JCC, 2007 WL 214260, at *6 (W.D. Wash. Jan. 25, 2007) (finding Rule 45(b)(2) objection meritless and service valid where subpoena issued from the Western District of Washington was served on non-party Verizon in New Jersey commanding production of documents in Washington.).

Federal Rule of Civil Procedure 45 does not concern how a corporation may be personally served. Instead, federal courts look to Federal Rule of Civil Procedure 4(e), because it specifically provides how personal service of process on a corporation is to be accomplished. See e.g., In re Pappas, 214 B.R. 84, 85 (D. Conn. 1997) ("Because [federal] Rule 45 does not specify what constitutes personal service upon a corporation, courts look to Federal Rule of Civil Procedure 4."). Federal courts consider service of a Federal Rule of Civil Procedure 45 subpoena to be "service of process". See id.

Federal Rule of Civil Procedure 4(h) expressly permits personal service upon a registered agent for service of process:

   (h) Serving a Corporation, Partnership, or Association.
   Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
      (1) in a judicial district of the United States:
             (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
             (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or
      (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i). Fed. R. Civ. Pro. 4(h).

If the non-party named in the subpoena is a corporation, as opposed to an individual, that corporation is amenable to service in any forum within which it is found — i.e., where the corporation has sufficient minimum contacts. International Shoe Co. v. Washington, 326 U.S. 310 (1945); see also Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408 (1984); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404, fn.8 (9th Cir. 1994) (upholding personal service of a subpoena by "tagging" an agent of a corporation found in the state).

June 19, 2009
Page 4

Oracle personally served Rimini's registered agent for service of process in California. Oracle notes that Rimini does not contend that Thomas Shay is not in fact a registered agent for service of process for Rimini, authorized to accept service.[1]  Moreover, Rimini conducts business in California at its offices located at 6601 Koll Center Pkwy., Suite 350 Pleasanton, CA 94566. Thus, Rimini could not contend that it cannot be "found" in California for purposes of being amendable to service.

The policy underlying both Rule 45 and 4 is that the method of service must comply with the due process requirement that it be reasonably calculated to give actual notice. Rimini's response to Oracle's subpoena (objections and a document production) show that service on the registered agent in California in fact provided Rimini with actual notice, and Rimini has not contended otherwise.[2]

**4.      Temporal Scope Objection**

Rimini objects to the requests for production as overbroad, unduly burdensome, and intended to harass to the extent the requests are unlimited in temporal scope or otherwise not limited to a time frame relevant to this litigation.  The subpoena specifies that the time period for Rimini's response to the document requests is from January 1, 2004 to and including the date of Rimini's response.

Oracle agrees to revise the relevant time period to the beginning of Rimini, including any possible planning stages, to a revised time period beginning January 1, 2005.  This revised time frame is limited in temporal scope, relevant to the pending litigation, and relevant to the topics of the document requests.  It is also within the discovery date range agreed to by the parties in the litigation.

**5.      Objection Based On Purported Confidentiality Obligations Or Non-Disclosure Agreements With Third Parties**

Rimini's objection to each request for production to the extent that it seeks information or documents that Rimini is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties is without merit.  Assuming such confidentiality agreements or obligations exist, such agreements and obligations are not a basis for avoiding discovery under Rule 45 of the Federal Rules of Civil Procedure.

---

[1] According to the records of the California Secretary of State, Thomas Shay is a "registered agent for service of process" for Rimini Street, Inc., and he is located at Rimini's California offices, 6601 Koll Center Pkwy., Suite 350 Pleasanton, CA 94566.

[2] In any event, Rimini has waived any objection to the sufficiency of service by accepting service of the subpoena and serving responses and objections to it.

June 19, 2009
Page 5

Neither Federal Rule of Civil Procedure 45 nor federal courts permit non-parties (or parties) to avoid discovery on the basis of confidentiality agreements or obligations with third parties. Federal law does not recognize a "confidentiality agreement" or "confidentiality obligation" privilege. Rimini's objection based on purported confidentiality obligations or agreements with third parties does not provide a basis to withhold documents.

Moreover, the Stipulated Protective Order entered by the Court in the pending litigation has been found to be sufficient to protect such information (see below). The parties to this litigation and numerous other non-parties have already produced confidential information pursuant to its terms.

6.      **Objection Based On Purported Confidential And Proprietary Nature of Documents Sought**

Oracle and Defendants have negotiated a Protective Order for this case that more than adequately addresses Rimini's concerns about any purported confidential or proprietary documents or information. The Protective Order protects information produced by non-parties. Material designated Confidential or Highly Confidential cannot be disclosed publicly. The use prohibition limits use of discovery material to this litigation only, unless the parties agree or the trial Court orders otherwise. These are significant protections which render Rimini's confidentiality concerns moot (without conceding their validity).

Moreover, Magistrate Judge Laporte found that this Protective Order is sufficient to protect any purported disclosure of trade secrets or other proprietary information, noting that if the Order is good enough for two "arch competitors" such as Oracle and SAP, she would "usually [] find a stringent protective order like that sufficient."

Furthermore, federal courts have routinely enforced subpoenas against non-parties to produce trade secrets where a protective order was in effect. See e.g., Covelo Clothing, Inc. v. Atlandia Imports, Inc., No. 07-02403, 2007 WL 4287731, at *2 (D. Colo. Dec. 5, 2007) (finding that the information sought was relevant, the court rejected the non-party's argument that the protective order was insufficient to protect trade secrets from its competitor); R.J. Reynolds Tobacco v. Philip Morris, Inc., 29 Fed. Appx. 880, 882 (3rd Cir. 2002) (requiring disclosure of trade secrets under the terms of a protective order).

Thus, Rimini's objection based on the purported confidential and proprietary nature of documents sought does not provide a basis to withhold documents, or a basis for otherwise limiting Rimini's production of documents in response to Oracle's subpoena.

7.      **Objection Based On Purported Privilege and Work Product Protection**

Federal Rule of Civil Procedure 45(d)(2) requires, for claiming privilege or protection, that the non-party take the following steps:

June 19, 2009
Page 6

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
> (i) expressly make the claim; and
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

In order for Rimini to withhold documents on the basis of any privilege in compliance with its duties under Rule 45, it must produce a privilege log. In any event, the three narrow document requests do not seek privileged material. Rimini's production should not be limited on this basis in any way absent the provision of a privilege log.

## II.   The Document Requests

**1.   Document Request Number 1 - Rimini's Business Model and Copies Of Oracle's Software**

In response to document request number 1, Rimini produced a handful of documents that were merely print-outs from Rimini's website. In addition, Rimini did not produce any documents sufficient to show whether Rimini currently relies or ever has relied on copies of customers' licensed Oracle software to provide software support. Rimini's specific objections to document request number 1 are the same as its general objections, and are addressed above. No valid basis exists for Rimini's refusal to produce documents in response to request number 1.

**2.   Document Request Number 2 - Automated Tools**

Request number 2 asks for documents sufficient to show what automated tools Rimini has used to download materials from any Oracle customer support website, including protocols applicable to any automated tools. Rimini has not produced any documents in response to this request. Rimini's specific objections to this document request are the same as its general objections, and are addressed above. No valid basis exists for Rimini's refusal to produce documents in response to request number 2.

**3.   Document Request Number 3 - Beth Lester's Checklists**

Request number 3 asks for all "checklists" or other documents drafted, revised, or maintained by Beth Lester to track the development, testing, documentation, packaging, or delivery of tax updates, as testified to by Beth Lester in her deposition at pages 76:6-77:1 and 77:18-25. Rimini has not produced any documents in response to this request.

Rimini's specific objections to this document request are the same as its general objections, and are addressed above. In addition, Rimini's unique specific objection — that Oracle "should not be permitted to use this document request, and any additional documents produced in response to it, as ground to reopen that deposition" and further objects to documents that "relate to Beth Lester" fails for multiple reasons. First, this is not a valid or recognized objection under the Federal Rules of Civil Procedure. Second, a

June 19, 2009
Page 7

production of documents concerning a past deponent does not constitute a reopening of a deposition. And, Oracle disagrees with Rimini's characterization that such documents concern Beth Lester — the checklists concern Rimini. Finally, Rimini does not have standing to object to any purported future deposition of Beth Lester.

Also, any attorney-client privilege or work product objection concerning this document request has been waived because Beth Lester has already testified as to the content of the "checklists" or other documents drafted, revised, or maintained by Beth Lester to track the development, testing, documentation, packaging, or delivery of tax updates.

Evidence suggests that Rimini has possession, custody, or control of the documents at issue in request number 3, and it cannot avoid its production obligation on these invalid bases.

### III.   Conclusion

Please confirm in writing that Rimini will produce documents in response to Oracle's subpoena, including supplementing the production in response to request number 1. Oracle reserves its rights to seek relief from the District of Nevada if necessary.

We look forward to your response.

Sincerely yours,

*Lucia MacDonald*

Lucia MacDonald
Attorney for plaintiffs Oracle USA, Inc., et al.

# EXHIBIT B

WSGR  Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304-1050
PHONE 650.493.9300
FAX 650.493.6811
www.wsgr.com

July 7, 2009

***VIA ELECTRONIC MAIL AND U.S. MAIL***

Lucia MacDonald, Esq.
Bingham McCutchen, LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111

Re:   **Oracle's Reply to Response and Objections of Non-Party Rimini Street, Inc. to Oracle USA, Inc.'s Subpoena.** *Oracle v. SAP AG, et al.*

Dear Lucia:

We are in receipt of your letter of June 19, 2009 concerning Rimini Street, Inc.'s ("Rimini Street") Response and Objections to Oracle USA, Inc.'s ("Oracle") subpoena for the production of documents. By this response, we are not waiving any of our prior objections.

Your letter does little to support Oracle's claim that the potentially burdensome and proprietary information you seek surpasses even the most limited threshold of relevance. With no explanation, you assert that damages in the Oracle/SAP litigation somehow "depends on assumptions about Rimini's business model." This vague and unsupported statement hardly provides a basis for the discovery you seek. Please specify how Rimini Street's "checklists" — and the other proprietary information you seek — relate to whether or not Oracle suffered lost profits as a result of conduct by TomorrowNow, or to whether or not Oracle would have obtained additional revenue if TomorrowNow had not done the acts it is alleged to have done.

We likewise disagree with your contention that Judge Laporte has already decided that Rimini Street's "business model" is properly the subject of discovery. She has not decided, much less made "specific findings," as to this issue. Moreover, as Judge Laporte properly recognized, she does not have jurisdiction to affect a Nevada subpoena, as only the *Nevada* court has jurisdiction to do so.

I am available to discuss this matter further at a mutually convenient time.

Sincerely,

Michael B. Levin

AUSTIN   NEW YORK   PALO ALTO   SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, D.C.

**EXHIBIT C**

# BINGHAM

Chad Russell
Direct Phone:  415.393.2336
Direct Fax:     415.393.2286
chad.russell@bingham.com

July 20, 2009

**Via U.S. Mail and Electronic Mail**

Aaron D. Ford
Snell & Wilmer LLP
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Phone: 702-784-5265
E-mail: aford@swlaw.com

Michael B. Levin
Wilson Sonsini Goodrich & Rosati PC
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone: 650-493-9300
E-mail: MLevin@wsgr.com

Re:  **Response And Objections Of Non-Party Rimini Street, Inc. To Oracle USA, Inc.'s Subpoena.** *Oracle USA, Inc. et al. v. SAP AG, et al.*

Dear Messrs. Ford and Levin:

Thank you for participating on our call today to discuss your July 7, 2009 letter and Rimini Street's objections to Oracle's subpoena. As we discussed on the call, the parties disagree as to the relevance of the information sought, and as to whether the stipulated protective order in the above titled action provides sufficient protection of any purported proprietary or confidential discoverable information in Rimini's possession, custody or control. As stated during the call, and as Oracle has described at length previously, Oracle's position is that the subpoena seeks information that is relevant to damages, and that the stipulated protective order is sufficient. We understand the parties are at an impasse and will proceed accordingly, but remain open to any ideas you may have for resolving the impasse.

Sincerely yours,

Chad Russell

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

# EXHIBIT D
# (REDACTED AT REQUEST OF
# SETH RAVIN)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--oOo--

ORACLE CORPORATION, a      )
Delaware corporation, ORACLE )
USA, INC., a Colorado       )
corporation, and ORACLE     )
INTERNATIONAL CORPORATION, a )
California corporation      )
                            )
              Plaintiffs,   )
                            )
                            )
      vs.                   ) No. 07-CV-1658 (PJH)
                            )
SAP AG, a German corporation, )
SAP AMERICA, INC., a Delaware )
corporation, TOMORROWNOW,   )
INC., a Texas corporation, and)
DOES 1-50, inclusive        )
                            )
              Defendants.   )
                            )
_____)

**CERTIFIED COPY**

**HIGHLY CONFIDENTIAL**

**ATTORNEYS' EYES ONLY**

DEPOSITION OF

SETH ADAM RAVIN

_____

Thursday, May 21, 2009

Volume 1

(Pages 1 - 275)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REPORTED BY: COREY W. ANDERSON, CSR 4096 (419096)

SETH ADAM RAVIN    May   , 2009
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 08:14:01 | 1 | |
| 08:14:02 | 2 | |
| 08:14:04 | 3 | |
| 08:14:07 | 4 | |
| 08:14:08 | 5 | Q.    Okay.  At some point in your tenure at |
| 08:14:12 | 6 | PeopleSoft, were you involved in what was known as |
| 08:14:16 | 7 | retrofit support? |
| 08:14:18 | 8 | A.    Yes. |
| 08:14:20 | 9 | Q.    What did that involve? |
| 08:14:22 | 10 | A.    I built a special program in 1999 to |
| 08:14:26 | 11 | provide retrofits for tax and regulatory updates to |
| 08:14:30 | 12 | PeopleSoft customers running on older releases. |
| 08:14:33 | 13 | |
| 08:14:36 | 14 | |
| 08:14:39 | 15 | |
| 08:14:41 | 16 | |
| 08:14:42 | 17 | |
| 08:14:43 | 18 | |
| 08:14:44 | 19 | |
| 08:14:52 | 20 | |
| 08:14:54 | 21 | |
| 08:14:55 | 22 | |
| 08:15:01 | 23 | |
| 08:15:05 | 24 | |
| 08:15:08 | 25 | |

14

SETH ADAM RAVIN   May 2_, 2009
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 08:15:12 | 1 | |
| 08:15:14 | 2 | |
| 08:15:15 | 3 | |
| 08:15:26 | 4 | |
| 08:15:30 | 5 | |
| 08:15:32 | 6 | |
| 08:15:37 | 7 | |
| 08:15:41 | 8 | |
| 08:15:43 | 9 | |
| 08:15:47 | 10 | |
| 08:15:50 | 11 | |
| 08:15:54 | 12 | |
| 08:15:58 | 13 | |
| 08:15:58 | 14 | |
| 08:15:59 | 15 | |
| 08:16:01 | 16 | |
| 08:16:05 | 17 | |
| 08:16:08 | 18 | Q.   Were you involved in figuring out |
| 08:16:15 | 19 | technically how these updates would be developed for |
| 08:16:18 | 20 | delivery to the customers? |
| 08:16:20 | 21 | A.   No, I was not. |
| 08:16:21 | 22 | Q.   Who was responsible for that? |
| 08:16:23 | 23 | A.   There were two people, Andrew Nelson, |
| 08:16:26 | 24 | which I had hired to run the program and a Matthew |
| 08:16:30 | 25 | Bowden at PeopleSoft who was part of the development |

15

SETH ADAM RAVIN     May 2_, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS.' EYES ONLY

| | | |
|---|---|---|
| 08:16:34 | 1 | team for those updates. |
| 08:16:36 | 2 | |
| 08:16:40 | 3 | |
| 08:16:44 | 4 | |
| 08:16:45 | 5 | |
| 08:16:47 | 6 | |
| 08:16:48 | 7 | Q.   Did you have an understanding at the time |
| 08:16:50 | 8 | as to how those tax and regulatory updates were |
| 08:16:55 | 9 | being developed at PeopleSoft? |
| 08:16:57 | 10 | A.   At a general level. |
| 08:16:58 | 11 | Q.   What was the understanding that you did |
| 08:16:59 | 12 | have at the time? |
| 08:17:01 | 13 | A.   The understanding was that we would take |
| 08:17:03 | 14 | the updates for a later release of the product that |
| 08:17:07 | 15 | a customer was not running, but licensed and |
| 08:17:10 | 16 | authorized to use, and change the updates in a way |
| 08:17:13 | 17 | to work on an older licensed and authorized updated |
| 08:17:17 | 18 | copy of the product that the customer was using. |
| 08:17:19 | 19 | Q.   And did you have an understanding as to |
| 08:17:23 | 20 | whether it was necessary to have copies of different |
| 08:17:32 | 21 | releases on a product in order to prepare the |
| 08:17:38 | 22 | retrofit update that would be delivered to a |
| 08:17:41 | 23 | customer? |
| 08:17:43 | 24 | MR. COWAN:   Objection, form. |
| 08:17:44 | 25 | THE WITNESS:   You would need to have both |

16

SETH ADAM RAVIN    May 2, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 08:17:48 | 1 | a source and a target.  You would need to have the |
| 08:17:50 | 2. | later release code in order to make the |
| 08:17:52 | 3 | modification, and then provide it for the -- the |
| 08:17:56 | 4 | earlier version of the code. |
| 08:17:58 | 5 | MR. HOWARD:  All right. |
| 08:17:59 | 6 | THE WITNESS:  So you would need both. |
| 08:18:01 | 7 | MR. HOWARD:  Q.  So at least two versions, the |
| 08:18:03 | 8 | current version and the older version of whatever |
| 08:18:06 | 9 | release it was that was being, the support was being |
| 08:18:10 | 10 | provided for? |
| 08:18:11 | 11 | A.    That's correct. |
| 08:18:11 | 12 | |
| 08:18:20 | 13 | |
| 08:18:24 | 14 | |
| 08:18:27 | 15 | |
| 08:18:29 | 16 | |
| 08:18:31 | 17 | |
| 08:18:34 | 18 | |
| 08:18:38 | 19 | |
| 08:18:41 | 20 | |
| 08:18:44 | 21 | |
| 08:18:48 | 22 | |
| 08:18:59 | 23 | |
| 08:19:02 | 24 | |
| 08:19:05 | 25 | |

17

SETH ADAM RAVIN     May 2-, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 08:20:28 | 1 |
| 08:20:29 | 2 |
| 08:20:31 | 3 |
| 08:20:37 | 4 |
| 08:20:40 | 5 |
| 08:20:44 | 6 |
| 08:20:51 | 7 |
| 08:20:54 | 8 |
| 08:20:55 | 9 |
| 08:20:58 | 10 |

08:21:05   11      Q.    So if I understand you, the -- there was a

08:21:10   12   change in TomorrowNow's business model in early

08:21:13   13   2002.

08:21:14   14            Is that right?

08:21:15   15      A.    That is correct.

08:21:15   16      Q.    And that business model was your idea?

08:21:20   17      A.    That is correct.

08:21:21   18      Q.    All right.  And what was that business

08:21:22   19   model as it became in early 2002?

08:21:27   20      A.    Was to offer a third party alternative

08:21:30   21   maintenance product to PeopleSoft customers on older

08:21:35   22   releases.

08:21:37   23

08:21:39   24

08:21:41   25

19

Merrill Legal Solutions
(800) 869-9132

SETH ADAM RAVIN    May 2, 2009

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | |
|---|---|
| 08:21:43 | 1 |
| 08:21:45 | 2 |
| 08:21:48 | 3 |
| 08:21:50 | 4 |
| 08:21:55 | 5 |
| 08:21:59 | 6 |
| 08:22:16 | 7 |
| 08:22:18 | 8 |
| 08:22:23 | 9 |
| 08:22:26 | 10 |
| 08:22:29 | 11 |
| 08:22:31 | 12 |
| 08:22:31 | 13 |
| 08:22:34 | 14 |
| 08:22:36 | 15 |
| 08:22:40 | 16 |
| 08:22:43 | 17 |
| 08:22:45 | 18 |
| 08:22:46 | 19 |
| 08:22:50 | 20 |
| 08:22:54 | 21 |
| 08:22:56 | 22 |
| 08:22:59 | 23 |
| 08:23:03 | 24 |
| 08:23:07 | 25 |

21    Q.   Well, let's -- let's start with technical.

22  Do you have an understanding as to how the

23  development of retrofit support products at

24  TomorrowNow differed or did not differ from how they

25  were developed at PeopleSoft?

20

| | | |
|---|---|---|
| 08:23:09 | 1 | MR. COWAN:  Objection, form. |
| 08:23:10 | 2 | THE WITNESS:  I believe it used the same |
| 08:23:12 | 3 | process or similar process, because you have to. |
| 08:23:16 | 4 | There aren't that many different ways you could do a |
| 08:23:18 | 5 | retrofit. |
| 08:23:19 | 6 | |
| 08:23:33 | 7 | |
| 08:23:38 | 8 | |
| 08:23:42 | 9 | |
| 08:23:44 | 10 | |
| 08:23:47 | 11 | |
| 08:23:53 | 12 | |
| 08:24:02 | 13 | |
| 08:24:04 | 14 | |
| 08:24:06 | 15 | |
| 08:24:09 | 16 | |
| 08:24:13 | 17 | |
| 08:24:16 | 18 | |
| 08:24:18 | 19 | |
| 08:24:21 | 20 | |
| 08:24:23 | 21 | |
| 08:24:23 | 22 | |
| 08:24:25 | 23 | |
| 08:24:28 | 24 | |
| 08:24:31 | 25 | |

21

SETH ADAM RAVIN   May 2~, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 08:51:00 | 1 | |
| 08:51:02 | 2 | |
| 08:51:03 | 3 | |
| 08:51:05 | 4 | |
| 08:51:06 | 5 | |
| 08:51:08 | 6 | |
| 08:51:09 | 7 | |
| 08:51:12 | 8 | |
| 08:51:16 | 9 | |
| 08:51:20 | 10 | |
| 08:51:23 | 11 | |
| 08:51:27 | 12 | |
| 08:51:35 | 13 | Q.   Now, at some point did TomorrowNow again |
| 08:51:41 | 14 | change its business model or adopt a new business |
| 08:51:44 | 15 | model that was sometimes known as the critical |
| 08:51:46 | 16 | support model? |
| 08:51:49 | 17 | A.   I have heard the term. |
| 08:51:52 | 18 | Q.   Do you have a general understanding as to |
| 08:51:53 | 19 | what, how that model differed from what we have been |
| 08:51:56 | 20 | talking about as the retrofit model? |
| 08:52:00 | 21 | A.   If it's the term I understand, then it |
| 08:52:02 | 22 | would mean the new service line.  It was actually a |
| 08:52:05 | 23 | new line of service which was a full replacement |
| 08:52:09 | 24 | service that did not require a customer to maintain |
| 08:52:12 | 25 | their Oracle support, or PeopleSoft support, |

43

SETH ADAM RAVIN    May __, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 08:52:15 | 1 | depending on the year. |
| 08:52:21 | 2 | Q.    When did TomorrowNow start selling that |
| 08:52:28 | 3 | new support model to customers? |
| 08:52:30 | 4 | A.    I recollect it was in 2004. |
| 08:52:35 | 5 | Q.    Whose idea was it to sell that new service |
| 08:52:37 | 6 | in 2004? |
| 08:52:42 | 7 | A.    It would have been mine. |
| 08:52:43 | 8 | Q.    And what were the reasons why you thought |
| 08:52:44 | 9 | TomorrowNow should adopt that new service model? |
| 08:52:50 | 10 | A.    Because it would be more profitable, and |
| 08:52:53 | 11 | we would have more customers if we developed our own |
| 08:52:55 | 12 | and didn't require customers to pay both PeopleSoft, |
| 08:52:59 | 13 | slash, Oracle and TomorrowNow. |
| 08:53:03 | 14 | |
| 08:53:04 | 15 | |
| 08:53:09 | 16 | |
| 08:53:10 | 17 | |
| 08:53:13 | 18 | |
| 08:53:19 | 19 | |
| 08:53:27 | 20 | |
| 08:53:29 | 21 | |
| 08:53:35 | 22 | |
| 08:53:38 | 23 | |
| 08:53:39 | 24 | |
| 08:53:41 | 25 | |

44

SETH ADAM RAVIN    May 2, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 09:48:40 | 1 |
| 09:48:43 | 2 |
| 09:48:47 | 3 |
| 09:48:50 | 4 |
| 09:48:55 | 5 |
| 09:48:56 | 6 |
| 09:49:01 | 7 |
| 09:49:04 | 8 |
| 09:49:05 | 9 |
| 09:49:06 | 10 |
| 09:49:11 | 11 |
| 09:49:12 | 12 |
| 09:49:15 | 13 |
| 09:49:19 | 14 |
| 09:49:21 | 15 |
| 09:49:23 | 16 |

09:49:32  17    Q.   Why did you leave?

09:49:36  18    A.   I -- after the acquisition, my reporting

09:49:39  19  structure changed within the organization, I

09:49:44  20  expected to work directly with Shai Agassi, instead

09:49:48  21  I was told to report in to the support organization,

09:49:51  22  and that wasn't acceptable to me.

09:49:53  23         And they also wanted me to report to

09:49:55  24  Andrew Nelson to continue on as -- for him as CEO of

09:50:01  25  TomorrowNow and for me to remain as president.  And

78

Merrill Legal Solutions
(800) 869-9132

SETH ADAM RAVIN  May 2   2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 09:50:03 | 1 | that wasn't acceptable to me. |
| 09:50:17 | 2 | |
| 09:50:24 | 3 | |
| 09:50:27 | 4 | |
| 09:50:30 | 5 | |
| 09:50:32 | 6 | |
| 09:50:33 | 7 | |
| 09:50:39 | 8 | |
| 09:50:41 | 9 | |
| 09:50:47 | 10 | |
| 09:50:48 | 11 | |
| 09:50:50 | 12 | |
| 09:50:53 | 13 | |
| 09:50:59 | 14 | |
| 09:51:01 | 15 | |
| 09:51:03 | 16 | |
| 09:51:04 | 17 | |
| 09:51:11 | 18 | |
| 09:51:13 | 19 | |
| 09:51:15 | 20 | |
| 09:51:17 | 21 | |
| 09:51:18 | 22 | |
| 09:51:20 | 23 | |
| 09:51:21 | 24 | |
| 09:51:23 | 25 | |

79

SETH ADAM RAVIN      May 2~, 2009
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | |
|---|---|
| 13:51:37 | 1 |
| 13:51:39 | 2 |
| 13:51:41 | 3 |
| 13:51:58 | 4 |
| 13:52:05 | 5 |
| 13:52:11 | 6 |
| 13:52:14 | 7 |
| 13:52:17 | 8 |
| 13:52:19 | 9 |
| 13:52:24 | 10 |
| 13:52:26 | 11 |
| 13:52:29 | 12 |
| 13:52:32 | 13 |
| 13:52:38 | 14 |
| 13:52:40 | 15 |
| 13:52:44 | 16 |
| 13:52:48 | 17 |
| 13:52:52 | 18 |
| 13:52:55 | 19 |
| 13:53:00 | 20 |
| 13:53:04 | 21 |
| 13:53:08 | 22 |
| 13:53:10 | 23 |
| 13:53:16 | 24 |
| 13:53:17 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

196

SETH ADAM RAVIN    May --, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 13:53:19 | 1 |
| 13:53:22 | 2 |
| 13:53:24 | 3 |
| 13:53:25 | 4 |
| 13:53:26 | 5 |
| 13:53:27 | 6 |
| 13:53:27 | 7 |
| 13:53:29 | 8 |
| 13:53:30 | 9 |
| 13:53:32 | 10 |
| 13:53:36 | 11 |
| 13:53:40 | 12 |
| 13:53:43 | 13 |
| 13:53:47 | 14 |
| 13:53:50 | 15 |
| 13:53:53 | 16 |
| 13:53:56 | 17 |
| 13:53:59 | 18 |
| 13:54:00 | 19 |
| 13:54:02 | 20 |
| 13:54:04 | 21 |
| 13:54:08 | 22 |
| 13:54:10 | 23 |
| 13:54:12 | 24 |
| 13:54:14 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

197

SETH ADAM RAVIN       May 2-, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 13:54:19 | 1 |
| 13:54:23 | 2 |
| 13:54:23 | 3 |
| 13:54:23 | 4 |
| 13:54:23 | 5 |
| 13:54:24 | 6 |
| 13:54:24 | 7 |
| 13:54:24 | 8 |
| 13:54:24 | 9 |
| 13:54:37 | 10 |
| 13:54:40 | 11 |
| 13:54:43 | 12 |
| 13:54:49 | 13 |
| 13:54:52 | 14 |
| 13:54:56 | 15 |
| 13:55:00 | 16 |
| 13:55:06 | 17 |
| 13:55:08 | 18 |
| 13:55:11 | 19 |
| 13:55:15 | 20 |
| 13:55:18 | 21 |
| 13:55:23 | 22 |
| 13:55:25 | 23 |
| 13:55:28 | 24 |
| 13:55:29 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

198

SETH ADAM RAVIN     May 21, 2009
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 13:55:31 | 1 | |
| 13:55:32 | 2 | |
| 13:55:36 | 3 | |
| 13:55:39 | 4 | |
| 13:55:44 | 5 | *REDACTED AT REQUEST* |
| 13:55:46 | 6 | *OF SETH RAVIN* |
| 13:55:48 | 7 | |
| 13:55:49 | 8 | |
| 13:55:51 | 9 | |
| 13:55:53 | 10 | |
| 13:55:53 | 11 | A.    Yes. |
| 13:55:54 | 12 | Q.    All right.  Let me back up a lit |
| 13:56:03 | 13 | Some background questions that I didn't |
| 13:56:05 | 14 | ask you at the beginning.  You are currently |
| 13:56:08 | 15 | employed? |
| 13:56:10 | 16 | A.    Yes. |
| 13:56:11 | 17 | Q.    By Rimini Street? |
| 13:56:13 | 18 | A.    Yes. |
| 13:56:14 | 19 | Q.    What's your title? |
| 13:56:15 | 20 | A.    Chief executive officer and president. |
| 13:56:17 | 21 | Q.    You are the founder of Rimini Street? |
| 13:56:19 | 22 | A.    Yes. |
| 13:56:20 | 23 | |
| 13:56:22 | 24 | |
| 13:56:22 | 25 | |

199

SETH ADAM RAVIN     May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 13:56:25 | 1 |
| 13:56:26 | 2 |
| 13:56:30 | 3 |
| 13:56:30 | 4 |
| 13:56:37 | 5 |
| 13:56:46 | 6 |
| 13:56:47 | 7 |
| 13:56:48 | 8 |
| 13:56:49 | 9 |
| 13:56:52 | 10 |
| 13:56:55 | 11 |
| 13:57:04 | 12 |
| 13:57:09 | 13 |
| 13:57:10 | 14 |
| 13:57:13 | 15 |
| 13:57:14 | 16 |
| 13:57:17 | 17 |
| 13:57:22 | 18 |
| 13:57:23 | 19 |
| 13:57:25 | 20 |
| 13:57:28 | 21 |
| 13:57:29 | 22 |
| 13:57:31 | 23 |
| 13:57:34 | 24 |
| 13:57:35 | 25 |

**REDACTED AT REQUEST OF SETH RAVIN**

Q.   And what product lines does Rimini Street support?

A.   In the Oracle world it's PeopleSoft, J.D. Edwards, and Siebel.  And we also support SAP product.

200

SETH ADAM RAVIN    May --, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:00:34 | 1 |
| 14:00:38 | 2 |
| 14:00:41 | 3 |
| 14:00:42 | 4 |
| 14:00:47 | 5 |
| 14:00:49 | 6 |
| 14:00:55 | 7 |
| 14:00:57 | 8 |
| 14:01:02 | 9 |
| 14:01:06 | 10 |
| 14:01:08 | 11 |
| 14:01:13 | 12 |
| 14:01:17 | 13 |
| 14:01:20 | 14 |
| 14:01:21 | 15 |
| 14:01:22 | 16 |
| 14:01:25 | 17 |
| 14:01:32 | 18 |
| 14:01:39 | 19 |
| 14:01:43 | 20 |
| 14:01:44 | 21 |
| 14:01:56 | 22 |
| 14:01:58 | 23 |
| 14:02:03 | 24 |
| 14:02:05 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

204

SETH ADAM RAVIN     May 21, 2009
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:02:06 | 1 |
| 14:02:08 | 2 |
| 14:02:12 | 3 |
| 14:02:16 | 4 |
| 14:02:21 | 5 |
| 14:02:25 | 6 |
| 14:02:27 | 7 |
| 14:02:29 | 8 |
| 14:02:38 | 9 |
| 14:02:43 | 10 |
| 14:02:46 | 11 |
| 14:02:47 | 12 |
| 14:02:48 | 13 |
| 14:02:51 | 14 |
| 14:02:53 | 15 |
| 14:02:57 | 16 |
| 14:03:00 | 17 |
| 14:03:08 | 18 |
| 14:03:13 | 19 |
| 14:03:15 | 20 |
| 14:03:19 | 21 |
| 14:03:24 | 22 |
| 14:03:25 | 23 |
| 14:03:30 | 24 |
| 14:03:31 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

205

SETH ADAM RAVIN      May 21, 2009
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

| Time | Line |
|------|------|
| 14:03:35 | 1 |
| 14:03:39 | 2 |
| 14:03:44 | 3 |
| 14:03:45 | 4 |
| 14:03:47 | 5 |
| 14:03:48 | 6 |
| 14:03:53 | 7 |
| 14:03:59 | 8 |
| 14:04:01 | 9 |
| 14:04:06 | 10 |
| 14:04:08 | 11 |
| 14:04:13 | 12 |
| 14:04:15 | 13 |
| 14:04:15 | 14 |
| 14:04:17 | 15 |
| 14:04:20 | 16 |
| 14:04:21 | 17 |
| 14:04:22 | 18 |
| 14:04:22 | 19 |
| 14:04:23 | 20 |
| 14:04:24 | 21 |
| 14:04:25 | 22 |
| 14:04:29 | 23 |
| 14:04:30 | 24 |
| 14:04:32 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

206

SETH ADAM RAVIN   May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:04:33 | 1 |
| 14:04:34 | 2 |
| 14:04:45 | 3 |
| 14:04:47 | 4 |
| 14:04:50 | 5 |
| 14:04:54 | 6 |
| 14:04:58 | 7 |
| 14:04:59 | 8 |
| 14:04:59 | 9 |
| 14:05:00 | 10 |
| 14:05:01 | 11 |
| 14:05:01 | 12 |
| 14:05:02 | 13 |
| 14:05:13 | 14 |
| 14:05:16 | 15 |
| 14:05:19 | 16 |
| 14:05:22 | 17 |
| 14:05:22 | 18 |
| 14:05:22 | 19 |
| 14:05:34 | 20 |
| 14:05:36 | 21 |
| 14:05:38 | 22 |
| 14:05:42 | 23 |
| 14:05:54 | 24 |
| 14:05:55 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

207

SETH ADAM RAVIN    May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:06:00 | 1 |
| 14:06:01 | 2 |
| 14:06:04 | 3 |
| 14:06:06 | 4 |
| 14:06:07 | 5 |
| 14:06:10 | 6 |
| 14:06:13 | 7 |
| 14:06:16 | 8 |
| 14:06:18 | 9 |
| 14:06:19 | 10 |
| 14:06:23 | 11 |
| 14:06:25 | 12 |
| 14:06:27 | 13 |
| 14:06:28 | 14 |
| 14:06:28 | 15 |
| 14:06:28 | 16 |
| 14:06:30 | 17 |
| 14:06:31 | 18 |
| 14:06:32 | 19 |
| 14:06:34 | 20 |
| 14:06:38 | 21 |
| 14:06:41 | 22 |
| 14:06:42 | 23 |
| 14:06:44 | 24 |
| 14:06:47 | 25 |

REDACTED AT REQUEST
OF SETH RAVIN

Merrill Legal Solutions
(800) 869-9132

SETH ADAM RAVIN     May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| Time | Line | |
|------|------|---|
| 14:06:48 | 1 | |
| 14:06:48 | 2 | |
| 14:06:52 | 3 | |
| 14:06:55 | 4 | |
| 14:06:56 | 5 | |
| 14:06:58 | 6 | |
| 14:07:04 | 7 | |
| 14:07:05 | 8 | |
| 14:07:08 | 9 | |
| 14:07:10 | 10 | |
| 14:07:11 | 11 | |
| 14:07:13 | 12 | |
| 14:07:22 | 13 | **REDACTED AT REQUEST** |
| 14:07:24 | 14 | **OF SETH RAVIN** |
| 14:07:26 | 15 | |
| 14:07:27 | 16 | |
| 14:07:27 | 17 | |
| 14:07:28 | 18 | |
| 14:07:30 | 19 | |
| 14:07:33 | 20 | |
| 14:07:35 | 21 | |
| 14:07:37 | 22 | |
| 14:07:46 | 23 | |
| 14:08:04 | 24 | |
| 14:08:06 | 25 | |

209

SETH ADAM RAVIN      May 27, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:08:11 | 1 |
| 14:08:16 | 2 |
| 14:08:18 | 3 |
| 14:08:21 | 4 |
| 14:08:25 | 5 |
| 14:08:31 | 6 |
| 14:08:36 | 7 |
| 14:08:37 | 8 |
| 14:08:38 | 9 |
| 14:08:43 | 10 |
| 14:08:47 | 11 |
| 14:08:50 | 12 |
| 14:08:53 | 13 |
| 14:08:58 | 14 |
| 14:08:59 | 15 |
| 14:09:05 | 16 |
| 14:09:07 | 17 |
| 14:09:14 | 18 |
| 14:09:19 | 19 |
| 14:09:20 | 20 |
| 14:09:20 | 21 |
| 14:09:22 | 22 |
| 14:09:24 | 23 |
| 14:09:26 | 24 |
| 14:09:28 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

210

SETH ADAM RAVIN    May 22, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:09:34 | 1 |
| 14:09:37 | 2 |
| 14:09:38 | 3 |
| 14:09:43 | 4 |
| 14:09:44 | 5 |
| 14:09:48 | 6 |
| 14:09:50 | 7 |
| 14:09:50 | 8 |
| 14:09:52 | 9 |
| 14:09:55 | 10 |
| 14:09:59 | 11 |
| 14:10:00 | 12 |
| 14:10:01 | 13 |
| 14:10:03 | 14 |
| 14:10:05 | 15 |
| 14:10:07 | 16 |
| 14:10:10 | 17 |
| 14:10:12 | 18 |
| 14:10:14 | 19 |
| 14:10:17 | 20 |
| 14:10:19 | 21 |
| 14:10:25 | 22 |
| 14:10:26 | 23 |
| 14:10:29 | 24 |
| 14:10:30 | 25 |

REDACTED AT REQUEST
OF SETH RAVIN

211

| | |
|---|---|
| 15:53:17 | 1 |
| 15:53:23 | 2 |
| 15:53:24 | 3 |
| 15:53:25 | 4 |
| 15:53:25 | 5 |
| 15:53:29 | 6 |
| 15:53:32 | 7 |
| 15:53:36 | 8 |
| 15:53:38 | 9 |
| 15:53:41 | 10 |
| 15:53:45 | 11 |
| 15:53:51 | 12 |
| 15:53:52 | 13 |
| 15:53:55 | 14 |
| 15:54:02 | 15 |
| 15:54:05 | 16 |
| 15:54:07 | 17 |
| 15:54:13 | 18 |
| 15:54:16 | 19 |
| 15:54:21 | 20 |
| 15:54:25 | 21 |
| 15:54:27 | 22 |
| 15:54:32 | 23 |
| 15:54:33 | 24 |
| 15:54:35 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

256

SETH ADAM RAVIN      May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 15:54:36 | 1 |
| 15:54:38 | 2 |
| 15:54:42 | 3 |
| 15:54:43 | 4 |
| 15:54:45 | 5 |
| 15:54:47 | 6 |
| 15:54:53 | 7 |
| 15:58:59 | 8 |
| 16:00:20 | 9 |
| 16:00:21 | 10 |
| 16:02:55 | 11 |
| 16:02:57 | 12 |
| 16:02:59 | 13 |
| 16:03:03 | 14 |
| 16:03:05 | 15 |
| 16:03:07 | 16 |
| 16:03:15 | 17 |
| 16:03:19 | 18 |
| 16:03:20 | 19 |
| 16:03:23 | 20 |
| 16:03:26 | 21 |
| 16:03:33 | 22 |
| 16:03:34 | 23 |
| 16:03:37 | 24 |
| 16:03:40 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

257

SETH ADAM RAVIN      May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| Time | No. |
|---|---|
| 16:04:49 | 1 |
| 16:04:50 | 2 |
| 16:04:51 | 3 |
| 16:04:55 | 4 |
| 16:04:58 | 5 |
| 16:04:59 | 6 |
| 16:05:07 | 7 |
| 16:05:09 | 8 |
| 16:05:14 | 9 |
| 16:05:18 | 10 |
| 16:05:21 | 11 |
| 16:05:25 | 12 |
| 16:05:27 | 13 |
| 16:05:28 | 14 |
| 16:05:41 | 15 |
| 16:05:45 | 16 |
| 16:05:47 | 17 |
| 16:05:48 | 18 |
| 16:05:49 | 19 |
| 16:05:51 | 20 |
| 16:05:55 | 21 |
| 16:06:03 | 22 |
| 16:06:13 | 23 |
| 16:06:14 | 24 |
| 16:06:18 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

259

SETH ADAM RAVIN    May 2, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| Time | Line |
|------|------|
| 16:06:23 | 1 |
| 16:06:27 | 2 |
| 16:06:29 | 3 |
| 16:06:31 | 4 |
| 16:06:33 | 5 |
| 16:06:34 | 6 |
| 16:06:36 | 7 |
| 16:06:37 | 8 |
| 16:06:39 | 9 |
| 16:06:43 | 10 |
| 16:06:45 | 11 |
| 16:06:47 | 12 |
| 16:06:51 | 13 |
| 16:06:55 | 14 |
| 16:06:56 | 15 |
| 16:06:59 | 16 |
| 16:07:07 | 17 |
| 16:07:09 | 18 |
| 16:07:11 | 19 |
| 16:07:18 | 20 |
| 16:07:19 | 21 |
| 16:07:21 | 22 |
| 16:07:26 | 23 |
| 16:07:29 | 24 |
| 16:07:32 | 25 |

REDACTED AT REQUEST
OF SETH RAVIN

260

SETH ADAM RAVIN      May 21, 2009
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 16:07:34 | 1 |
| 16:07:35 | 2 |
| 16:07:40 | 3 |
| 16:07:43 | 4 |
| 16:07:59 | 5 |
| 16:08:00 | 6 |
| 16:08:02 | 7 |
| 16:08:05 | 8 |
| 16:08:09 | 9 |
| 16:08:11 | 10 |
| 16:08:13 | 11 |
| 16:08:14 | 12 |
| 16:08:17 | 13 |
| 16:08:18 | 14 |
| 16:08:19 | 15 |
| 16:08:40 | 16 |
| 16:08:42 | 17 |
| 16:08:43 | 18 |
| 16:10:32 | 19 |
| 16:10:32 | 20 |
| 16:10:34 | 21 |
| 16:10:34 | 22 |
| 16:10:45 | 23 |
| 16:10:48 | 24 |
| 16:11:01 | 25 |

**REDACTED AT REQUEST
OF SETH RAVIN**

261

Merrill Legal Solutions
(800) 869-9132

## CERTIFICATE OF REPORTER

I, COREY ANDERSON, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript [X] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: May 26, 2009

COREY ANDERSON, CSR No. 4096